492 

HIRONOBU HINO, Plaintiff-Appellant, *v.* KENAM KIM, Comptroller, State of Hawaii, Defendant-Appellee

No. 5180

May 24, 1972

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

The Board of Education on January 3, 1971, adopted Regulation No. 5206. Under Sec. B-5 of the regulation, educational officers employed on 12-month a year work schedule were granted a differential of 15% to be retroactive to September 1, 1970.

On April 20, 1971, Hironobu Hino, an educational officer employed on a 12-month a year work schedule, hereinafter referred to as Plaintiff, wrote to the Board of Education requesting implementation of the 15% differential. In response to this request, the Superintendent of Education duly filed with KeNam Kim, Comptroller of the State of Hawaii, hereinafter referred to as Comptroller, Standard Form 5A dated May 4, 1971, which requested and authorized payment of 15% differential to Plaintiff. On May 6, 1971, the Comptroller returned the Standard Form 5A to the Superintendent on the advice of the Attorney General that "the differential is not properly authorized."

From this refusal, the Plaintiff, pursuant to HRS § 40-91, appealed directly to this court.

The Plaintiff on appeal contends that the differential payment provision is valid. The Comptroller contends otherwise, and also that he may not be compelled to pay the differential because funds are not available to make such payment.

The Plaintiff argues that the Board has the power and authority to grant the 15% differential to educational officers under Hawaii Constitution, Art. IX, Sec. 3, which provides "[t]he board of education shall have power, in accordance with law to formulate policy, and to exercise control over the public school system . . . ." To substantiate his position he contends that nothing in our statutes "precludes the Board from formulating a policy providing a 15% differential for 12 month educational officers" and, therefore the regulation adopting the differential is "in accordance with law."

The fact that there is no provision in our statute which precludes the Board from formulating a policy providing a 15% differential for 12-month educational officers is not determinative of the issue whether the differential is or is not "in accordance with law." Perhaps this argument was advanced by the Plaintiff because of an Attorney General's opinion[1] rendered the Board of Education.

In 1969 the Legislature enacted Act 127, SLH 1969. Sec. 24(c) of the Act [HRS § 297-33.1 (1971 Supp.)] provides: "(c) The salary schedule hereby established shall apply to all educational officers of the department of education effective September 1, 1970 . . . ." Subsection (e) further provides: "Any principal, vice principal or other educational officer on a ten-month work year must earn at least six credits within a three-year cycle in order to receive an increment or longevity step increase . . . ." These provisions are crystal

---

[1]Letter dated March 18, 1971 addressed to the Board of Education at page 2 stated: "With respect to restrictions, our review of existing statutes disclose no provision which expressly prohibits the Board of Education from adopting said plan to provide for the pay differentials in question."

clear and they specifically mandate that all educational officers of the Department of Education, whether they are on a 10-month or 12-month a year work schedule, be paid according to the "Educational Officers' Salary Schedule" provided therein.[2] Thus any Board regulation adopting a different pay schedule must perforce be contrary to law.

The fact that the differential had been instituted upon the recommendation contained in the "Jacobs study"[3] does not give legality to the Board's action which is in direct conflict with the schedule enacted by the Legislature.

The 1969 State Legislature adopted House Concurrent Resolution No. 7, which directed the Board of Education "to formulate plans for the reorientation of the present classification system and compensation plan toward adequate position descriptions and evaluations so that salary in the main can reflect position, duties and responsibilities rather than years of training and service and additional credits earned . . . ." It further provided that "reorientation of the classification system and compensation plan [must] be done within the salary schedule as adopted by the Legislature . . . ." And the resolution expressly directed the "Board of Education [to] submit a report of its findings and recommendations to the Legislature twenty days before the convening of the 1971 Regular Session." The resolution does not empower or authorize the Board to alter the salary

---

[2]As first item of the stipulation, filed on March 6, 1972, both parties agreed that "Section 297-33.1, Hawaii Revised Statutes, relates to salary schedules applicable to *all* educational officers of the Department of Education effective September 1, 1970" (emphasis added). They also stipulated that subsection(e) had been superseded by collective bargaining. However, it seems that they failed to realize that Sec. 297-33.1 mandates payment of salaries to all educational officers pursuant to the schedule provided therein.

It would appear from the stipulation, educational officers have the right to collective bargaining and their salaries are a proper subject for such negotiation.

[3]A report submitted by the consulting firm of Jacobs Company, Inc., retained by the Department of Education in 1969 to conduct a classification and salary study of the positions of educational officers in the Department of Education.

schedule formulated by the Legislature.[4]

We hold that the differential voted by the Board of Education by Regulation No. 5206 is in direct conflict with HRS § 297-33.1 (1971 Supp.) and therefore invalid and void.

Affirmed.

*Benjamin C. Sigal* (*Shim, Sigal, Ono & Huddy* of counsel) for plaintiff-appellant.

*Roy M. Miyamoto*, Deputy Attorney General (*George Pai*, Attorney General, with him on the briefs), for defendant-appellee.

---

[4]Here, we are pointing out that the pay differential adopted by the Board was not only unauthorized but also contrary to the provisions of House Concurrent Resolution No. 7. We are in no way intimating that the Legislature may amend or alter an act by resolution.